IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

GEORGE W. STINSON and )
ED D. LEWIS, )
)
Plaintiffs, )
v. ) NO. 3:04-00095
) JUDGE HAYNES
CRYE-LEIKE, INC., GEORGE )
ALEXANDER and WILLIAM DESHIELDS, )
)
Defendants. )

## ORDER

Plaintiffs, George W. Stinson and Ed. D. Lewis, filed this breach of contract action under 28 U.S.C. § 1332, the federal diversity statute, against the Defendants Crye-Leike, Inc., George Alexander, and William DeShields.[1] The gravamen of Plaintiffs' complaint is that on September 29, 2003, Plaintiffs entered into a contract to sell real property located in Nashville, Tennessee to Defendant DeShields, but that DeShields breached the contract by failing to close on the property. In addition, Defendant Crye-Leike, by and through its agent, Defendant Alexander, DeShields's real estate agent, breached its statutory and common law duty to diligently exercise reasonable skill and care in providing services to all parties to the transaction. Defendants deny that Plaintiffs and DeShields executed a valid contract for the sale of Plaintiffs' property and deny further that Crye-Leike and Alexander violated their duties, if any, to Plaintiffs.

After a two-day trial, the jury returned a verdict in favor of Plaintiffs in the amount of one hundred ninety-three thousand four hundred nineteen dollars and sixty cents ($193,419.60) against DeShields, and one hundred twenty-eight thousand nine hundred forty-six dollars and forty cents

---

[1] The complaint originally included as a defendant ASI, Inc., but the claims against that defendant were dismissed with prejudice by an Agreed Order. (Docket Entry No. 14).

($128,946.40) against Crye-Leike and Alexander. Defendants moved for a directed verdict, which this Court reserved. (Docket Entry No. 83).

Before the Court are Defendants' motions for judgment as a matter of law or, in the alternative, a new trial (Docket Entry Nos. 84 and 85), collectively contending, in sum: (1) that there was no "meeting of the minds" between Plaintiffs and DeShields, as the evidence at trial demonstrated that Plaintiffs did not accept DeShields's counteroffer; (2) that there is no evidence that Crye-Leike and Alexander breached their common law or statutory duties to Plaintiffs; and (3) that the jury award of damages was improper. In response (Docket Entry No. 86), Plaintiff asserts that the evidence presented at trial supports both the jury verdict and damage award.

The evidence presented at trial was that in May 2003, Plaintiffs and DeShields began negotiations for Plaintiffs to sell to DeShields real property located in Nashville, Tennessee, as well as "The Connection", a nightclub operated within that property (collectively "The Connection"). See, e.g., Plaintiffs' Exhibit Nos. 2-4. Throughout these negotiations, Plaintiffs were represented by Eric Haner, an attorney, and DeShields was represented by Alexander, his real estate broker. See, e.g., Plaintiffs' Exhibit Nos. 2 and 3.

On May 21, 2003, Plaintiffs received from DeShields a proposed contract for the sale of "The Connection", signed by DeShields. (Plaintiffs' Exhibit No. 2). The following day, May 22, 2003, on behalf of Plaintiffs, Haner requested certain modifications and amendments to DeShields's offer, including an earnest money deposit requirement. (Plaintiffs' Exhibit No. 3). Specifically, Haner requested a $10,000 earnest money deposit, but it was subsequently modified to $5,000, and that modification was initialed by Stinson. Id. On June 12, 2003, Haner wrote to Alexander the following: "Since it has been three (3) weeks since my clients . . . submitted a counter-proposal to

2

your proposed contract for the sale of ["The Connection"], and since we have received no response thereto, this letter is to advise you that all terms and conditions outlined in our counter-proposal letter are hereby declared null and void." (Plaintiffs' Exhibit No. 7).

DeShields reopened negotiations with Plaintiffs on September 10, 2003, when Alexander faxed to Stinson another contract proposal. (Plaintiffs' Exhibit No. 8). The contract proposal was signed by ASI, Inc. and what appears to read Robert S. Costin.[2] Id. On the facsimile cover sheet to the proposal, Alexander opined to Stinson that "[t]his is a good contract." Id. On September 11, 2003, Haner wrote a letter to Alexander in response to DeShields's offer, and proposed amendments and modifications to the contract, including an earnest money deposit requirement. (Plaintiffs' Exhibit No. 10).

Alexander then prepared another contract proposal on behalf of DeShields making some of the changes requested by Plaintiffs, and sent this proposal to Haner on behalf of Plaintiffs on September 29, 2003. (Plaintiffs' Exhibit No. 13). Haner returned the contract, signed by Plaintiffs and dated September 29, 2003, but included an addendum that required, among other things, another $5,000 earnest money from DeShields. (Plaintiffs' Exhibit Nos. 14 and 19). The addendum, also signed by Plaintiffs and dated September 29, 2003, provided further that "[t]he attached offer is ACCEPTED, except as herein provided[.]" Id.

Upon receipt of the alleged contract and proposed addendum signed by Plaintiffs, Alexander

---

[2] Plaintiffs argued at trial that the "Costin" signature in the September 10, 2003 contract proposal is evidence that DeShields, with the assistance of Alexander, was attempting to purchase "The Connection" and broker it to a third party for a profit. However, the contract proposal ultimately at issue in this case was signed by DeShields himself. Accordingly, the Court concludes that this discrepancy is irrelevant for purposes of evaluating Defendants' motions.

3

delivered the documents to DeShields on September 29, 2003 for his signature. DeShields modified the addendum by crossing out the earnest money provision and signed the contract proposal and addendum later that day. (Plaintiffs' Exhibit No. 15). Alexander returned the contract and modified addendum to Haner also on September 29, 2003. (Plaintiffs' Exhibit No. 16).

Plaintiffs did not re-sign the addendum after DeShields' redaction of the earnest money provision, initial the modification, or otherwise communicate acceptance to DeShields' modification in any way to DeShields or Alexander. Further, Haner testified at trial that he did not provide DeShields or Alexander written or verbal communication of Plaintiffs' acceptance of DeShields' modification. For his part, DeShields testified that in addition to Plaintiffs' lack of communication of acceptance, he verbally notified Stinson that he had withdrawn his counteroffer.

Plaintiffs contended at trial that they believed that their receipt of the contract and modified addendum from Alexander on September 29, 2003. Haner testified that Alexander notified him that the contract was effective, that no further action was necessary, and that the closing was to occur on the date set out in the contract.

The standard for awarding judgment as a matter of law is as follows:

> If during a trial by jury a party has been fully heard on an issue and there is no legally sufficient basis for a reasonable jury to find for that party on that issue, the court may determine the issue against that party and may determine the issue against that party and may grant a motion for judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that issue.

Fed. R. Civ. P. 50(a)(1). If, as here, the Court does not grant judgment as a matter of law at the close of the evidence, and the jury renders a verdict, the movant may renew its request within ten days after entry of judgment. Fed. R. Civ. P. 50(b). Under such circumstances, the court may: (1) allow the judgment to stand; (2) order a new trial; or (3) direct entry of judgment as a matter of law. Id.

4

Under Tennessee law, it is well established that in order for a contract to be validly executed, the acceptance must be identical with the offer. According to this so-called "mirror image rule", "[t]here must be no variance between the acceptance and the offer. Accordingly . . . acceptance[] upon terms varying from those offered[] is a rejection of the offer and puts an end to the negotiations unless the party who made the original offer renews it, or assents to the modifications suggested." Cummins v. Opryland Prods., 2001 WL 219896, at *2 (Tenn. Ct. App. Mar. 7, 2001) (quoting Canton Cotton Mills v. Bowman Overall Co., 257 S.W. 398, 402 (Tenn. 1924)). However, it is also well established that a contract may be established by the parties course of dealing or conduct. Frank Rudy Heirs Assocs. v. Sholodge, Inc., 967 S.W.2d 810, 814 (Tenn. Ct. App. 1997); see also Union Realty Co., Ltd. v. Moses, 984 F.2d 715, 721 n.6 (6th Cir. 1993) ("[A] counter-offer . . . may be accepted by conduct.").

Here, the evidence presented at trial was that DeShields, through Alexander, reopened negotiations with Plaintiffs, through Haner, Haner on September 29, 2003 submitted to Alexander a contract and addendum requiring an earnest money provision, each signed by Plaintiffs. Later that day, Alexander returned to Haner the contract and modified addendum signed by DeShields. Thus, DeShields's modification acted as a rejection of Plaintiffs' offer. As a consequence, this rejection "put[] an end to the negotiations unless the party who made the original offer renews it, or assents to the modifications suggested." Cummins, 2001 WL 219896, at *2. There is no proof that Plaintiffs, either through Haner or by themselves, assented or accepted the terms of the modified addendum.

Plaintiffs contend that their acceptance can nevertheless be established by the parties' course of dealing and conduct. The evidence presented at trial established that throughout the parties'

5

negotiations, Plaintiffs, Alexander, and/or DeShields would initial or otherwise communicate acceptance of any modification made to contract proposals. Moreover, the negotiations for the sale of "The Connection" were made at arm's length. Plaintiffs were represented by counsel throughout these negotiations, and consistently insisted on requiring DeShields provide an earnest money deposit. The negotiations even broke down and were abandoned by Plaintiffs in June 2003 because DeShields never communicated acceptance to Plaintiffs of their proposed modifications and addendum, referred to by Haner as a "counter-proposal". (Plaintiffs' Exhibit No. 7).

Plaintiffs argue further that other provisions were crossed out without subsequent signatures or initials by the parties, and such a practice demonstrate that modifications could be accepted without communication. Yet, as no contract was ever consummated by the parties before September 29, 2003, there is no indication that such modifications were indeed accepted. Moreover, Plaintiffs requested an earnest money deposit be placed in the contract on three separate occasions. Given the importance Plaintiffs seemingly placed on such a provision and their insistence on its inclusion, Plaintiffs' conduct demonstrate that such a provision was an essential term to a prospective agreement, absent proof of acceptance of its redaction.

In sum, Plaintiffs present no evidence that they, or their attorney, accepted DeShields's counteroffer, either through express manifestations of acceptance or implicitly through the parties' conduct or their prior course of dealing. Absent such acceptance, no valid contract was executed.

As to Plaintiffs' claims against Crye-Leike and Alexander, under Tennessee law, as relevant here, real estate brokers owe to all parties to a real estate transaction duties of diligence, confidentiality, and honesty and good faith. However, as noted above, the Court has concluded that, as a matter of law, Plaintiffs and DeShields did not enter into a contract for the sale of "The

Connection" because neither Plaintiffs nor their attorney accepted the terms of DeShields's modification to their initial proposal. Thus, Plaintiffs cannot establish that they suffered damage by the actions or inactions of Crye-Leike and/or Alexander. Any failure to consummate the sale of "The Connection" was attributable to Plaintiffs and/or their attorney, Eric Haner.

For the foregoing reasons, the Court concludes that he proof presented at trial demonstrated overwhelming evidence that Plaintiffs never accepted the terms of DeShields's counteroffer redacting the earnest money deposit requirement of the addendum. The Court is convinced that there is no legally sufficient basis upon which a reasonable jury could have found for Plaintiffs based upon the facts and law at issue in this action. The Court concludes that honoring the jury verdict would constitute a miscarriage of justice. Accordingly, the Defendants' motions for judgment as a matter of law that were initially reserved by the Court and later renewed (Docket Entry Nos. 84 and 85) are hereby **GRANTED**. This action is **DISMISSED** with prejudice.

This Order constitutes the Final Judgment in this action.

It is so **ORDERED**.

**ENTERED** this the 22nd day of July, 2005.

_____
WILLIAM J. HAYNES, JR.
United States District Judge